**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**$49,576.00 U.S. CURRENCY, Defendant,**

**Francisco Lombera, Claimant–Appellant.**

No. 95–56170.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 13, 1996.

Decided June 25, 1997.

David L. Ross, Eric Avazian, Law Offices of David L. Ross, Beverly Hills, CA, for claimant-appellant Francisco Lombera.

Miriam A. Krinsky, Carla A. Ford, Assistant United States Attorneys, Los Angeles, CA, for plaintiff-appellee United States of America.

Before: HALL, KOZINSKI and HAWKINS, Circuit Judges.

Opinion by Judge Kozinski; Concurrence by Judge Hall.

KOZINSKI, Circuit Judge.

We consider whether the government has met its burden of proof in a civil forfeiture action.

I

On January 31, 1994, appellant was detained and searched by a Drug Enforcement

Administration Narcotics Task Force at the Ontario International Airport in Ontario, California. The agents had been notified by an American Airlines desk agent in Dallas, Texas that someone named "Jacinto Rodriguez" had purchased a one-way ticket in cash just minutes before flight number 533 to Ontario departed. While passengers were disembarking flight 533, agents removed Rodriguez's bag from the plane. A drug-sniffing dog alerted to the bag, which was then put on the luggage carrousel. Meanwhile, agents observed appellant walking "in a very nervous manner" from the plane to the baggage-claim area.

When appellant claimed Rodriguez's bag, agents approached him and asked for some identification. Appellant produced a California driver's license with the name "Jacinto Rodriguez" and an alien resident card with the name "Francisco Lombera." When asked about "bulges" in his pants, appellant responded that he was carrying $2000 in cash in his pockets. The officers asked appellant to accompany them to their office; appellant agreed.

In the office, appellant told the agents that there was no money in the bag. Although he consented to a search of the bag, there was a problem: The bag had two locks-a combination and key lock-and appellant knew the combination but didn't have the key. However, the manufacturer of the suitcase used the exact same lock on all its cases, and the agents had a key from another case made by the same manufacturer. When the agents opened the bag, they discovered $49,576 wrapped inside a pair of blue jeans. Although appellant denied ownership of the money, he refused to sign a waiver of ownership or talk further about it. The agents therefore released appellant, but kept the money. Appellant was not charged with a crime.

The government moved to forfeit the money under 21 U.S.C. § 881(a)(6). The district court held that, based on the above facts, the government had probable cause to believe the money was involved in a drug transaction and thus the burden shifted to appellant to prove otherwise by a preponderance of the evidence. When appellant failed to meet his burden of proof, the district court ordered the money forfeited. Appellant challenges both the district court's probable cause determination and the constitutionality of the forfeiture statute's burden-shifting mechanism.[1]

## II

■■■ To sustain forfeiture of currency under 21 U.S.C. § 881(a)(6), a showing that the currency was "involved in *some* illegal activity is not enough-the government must have probable cause to believe that the property is involved in [a drug transaction]." *United States v. $191,910.00 in United States Currency,* 16 F.3d 1051, 1071 (9th Cir.1994) (emphasis in original); *cf. United States v. Dickerson,* 873 F.2d 1181, 1184 (9th Cir.1988) ("To pass the point of mere suspicion and to reach probable cause, it is necessary to demonstrate by some *credible evidence* the probability that the plane was in fact used to transport a controlled substance." (emphasis in original)). Here, the government points to two pieces of evidence that arguably link the seized money to a drug transaction. First, the drug-sniffing dog alerted to the money. We have held, however, that this factor is entitled to little weight because of the widespread contamination of money with drug residue in the Los Angeles area. *See United States v. United States Currency, $30,060.00,* 39 F.3d 1039, 1043 (9th Cir.1994). Second, the government notes that appellant was once detained in connection with a drug-related crime. Since appellant was released and never charged with a crime, this fact is not a credible link between the money and a drug transaction. *See United States v. $215,-300 United States Currency,* 882 F.2d 417, 419 (9th Cir.1989).

■■■ The government also argues that probable cause exists because appellant fits a drug courier profile defined by the affidavit of the arresting officer. In the Fourth Amendment context, however, a drug courier profile can, at most, provide grounds for

1. Appellant also challenges his seizure and the subsequent search of his suitcase. Because appellant consented to both, the district court correctly denied appellant's motion to suppress.

reasonable suspicion; it cannot establish probable cause. *See, e.g., United States v. Sokolow,* 490 U.S. 1, 9, 109 S.Ct. 1581, 1586–87, 104 L.Ed.2d 1 (1989); *Florida v. Royer,* 460 U.S. 491, 507, 103 S.Ct. 1319, 1329, 75 L.Ed.2d 229 (1983); *Morgan v. Woessner,* 997 F.2d 1244, 1254 & n. 6 (9th Cir.1993). As the standard of probable cause is similar for forfeiture and the Fourth Amendment, *United States v. One 56–Foot Yacht Named Tahuna,* 702 F.2d 1276, 1281–82 & n. 3 (9th Cir.1983), the fact that appellant's actions matched a drug courier profile cannot establish probable cause to justify forfeiture.

■ Finally, appellant's use of a fake driver's licence, his evasive and dishonest answers to questions, and his general nervous behavior are indicative of some illegal activity, but not necessarily of drug trafficking. We therefore conclude that the government failed to produce sufficient evidence to support a finding of probable cause to believe the property was involved in a drug transaction.

### III

■ Because we find no probable cause to sustain the forfeiture, we need not resolve appellant's constitutional challenge to the burden-shifting used in forfeiture proceedings. *See* 19 U.S.C. § 1615. Nevertheless, we feel constrained to answer the government's assertion that such a challenge is foreclosed by our caselaw. According to the government, our decision in *United States v. One 1970 Pontiac GTO,* 529 F.2d 65 (9th Cir.1976), has immunized section 1615 against a due process attack; two of our sister circuits also take this view. *See United States v. One Beechcraft King Air 300 Aircraft,* 107 F.3d 829, 829–30 (11th Cir. 1997); *United States v. $250,000 in United States Currency,* 808 F.2d 895, 900 n. 17 (1st Cir.1987) (both citing *One 1970 Pontiac GTO* ). We note, however, that constitutional doctrine has changed a good bit since *One 1970 Pontiac GTO* and that opinion is therefore of questionable validity today.

The biggest doctrinal change occurred a month after *One 1970 Pontiac GTO* was decided: The Supreme Court in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), held that civil administrative proceedings which result in deprivations of property must provide meaningful due process safeguards. Subsequently, the Court specified that one such safeguard is the imposition of a heightened burden of proof on the government. *See, e.g., Santosky v. Kramer,* 455 U.S. 745, 764–65, 102 S.Ct. 1388, 1400–01, 71 L.Ed.2d 599 (1982); *Addington v. Texas,* 441 U.S. 418, 427, 99 S.Ct. 1804, 1810, 60 L.Ed.2d 323 (1979). And, in *United States v. James Daniel Good Real Property,* 510 U.S. 43, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993), the Court made it clear that the *Mathews v. Eldridge* test applies to civil in rem forfeiture proceedings. *See id.* at 53, 114 S.Ct. at 500–01. As a result, even if *One 1970 Pontiac GTO* is still good law, it cannot possibly preclude a *Mathews v. Eldridge* constitutional challenge.

Moreover, our rationale for rejecting the due process challenge in *One 1970 Pontiac GTO* is now somewhat suspect. We reasoned there that civil forfeiture proceedings were not "criminal enough" to preclude Congress from exercising its power to set burdens of proof in civil cases. 529 F.2d at 66. In characterizing civil forfeiture as not "criminal enough," we followed the Supreme Court's then-apparent lead: Although civil forfeiture had been deemed criminal for Fourth and Fifth Amendment purposes, we noted that "the Supreme Court has firmly refused to broaden the criminal aspect of forfeiture so as to encompass a wider range of constitutional protections." *Id.* The Supreme Court, however, has recently expanded the constitutional protections applicable in forfeiture proceedings to include those of the Eighth Amendment. *See Austin v. United States,* 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993). *But see United States v. Ursery,* —— U.S. ——, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996) (refusing to apply double jeopardy protections). At the very least, this doctrinal upheaval should force us to revisit *One 1970 Pontiac GTO*'s reasoning. We therefore agree with the Second Circuit: "*Good* and *Austin* reopen the question of whether the quantum of evidence the government needs to show in order to obtain a warrant *in rem* allowing seizure-probable

cause-suffices to meet the requirements of due process." *United States v. One Parcel of Property Located at 194 Quaker Farms Road,* 85 F.3d 985, 990 (2nd Cir.), *cert. denied,* — U.S. —, 117 S.Ct. 304, 136 L.Ed.2d 221 (1996).

At oral argument, the government also contended that the *Addington* line of due process cases-in which the Court imposed heightened burdens of proof on the government-are inapposite in the forfeiture context because what was at stake there was merely property, not liberty. The government bases this argument on the Court's observation in *Addington* that heightened burdens of proof are often required when an interest "more substantial than mere loss of money" is at stake. *Addington,* 441 U.S. at 424, 99 S.Ct. at 1808. However, this distorts what *Addington* actually said. In fact, the paragraph in which this quotation appears supports appellant's argument. The Court explains there that a "clear and convincing" standard of proof is often used in cases "involving allegations of fraud or some other quasi-criminal wrongdoing by the defendant" because "[t]he interests at stake ... are deemed to be more substantial than mere loss of money." *Addington,* 441 U.S. at 424, 99 S.Ct. at 1808. Of course, forfeiture proceedings have long been considered "quasi-criminal" proceedings, *see, e.g., Boyd v. United States,* 116 U.S. 616, 634, 6 S.Ct. 524, 534, 29 L.Ed. 746 (1886); *United States v. Riverbend Farms, Inc.,* 847 F.2d 553, 558 (9th Cir.1988), and forfeiture proceedings perforce involve something "more substantial than mere loss of money."

Finally, we observe that allowing the government to forfeit property based on a mere showing of probable cause is a "constitutional anomaly." 1 David B. Smith, *Prosecution and Defense of Forfeiture Cases,* ¶ 2.04, at 2-37 (1996). As the Supreme Court has explained, burdens of proof are intended in part to "indicate the relative importance attached to the ultimate decision." *Addington,* 441 U.S. at 423, 99 S.Ct. at 1808. The stakes are exceedingly high in a forfeiture proceeding: Claimants are threatened with permanent deprivation of their property, from their hard-earned money, to their sole means of transport, to their homes. We would find it surprising were the Constitution to permit such an important decision to turn on a meager burden of proof like probable cause. *See Santosky,* 455 U.S. at 758, 102 S.Ct. at 1397 ("Whether the loss threatened by a particular type of proceeding is sufficiently grave to warrant more than average certainty on the part of the factfinder turns on both the nature of the private interest threatened and the permanency of the threatened loss."); *see also United States v. All Funds on Deposit in Any Accounts Maintained at Merrill Lynch,* 801 F.Supp. 984, 991 (E.D.N.Y.1992) (Weinstein, J.) (burden-shifting "is inherently unfair to claimants"), *aff'd,* 6 F.3d 37 (2d Cir.1993). We leave the ultimate resolution of this question for another day.

**REVERSED.**

HALL, Circuit Judge, concurring in part.

Judge Kozinski's disquisition in Part III on the constitutionality of burden-shifting in forfeiture proceedings is entirely dictum. Moreover, it is dictum on an important constitutional issue, thus violating our rule against reaching constitutional questions unless we must in order to dispose of a case. *E.g., Jean v. Nelson,* 472 U.S. 846, 854, 105 S.Ct. 2992, 2996, 86 L.Ed.2d 664 (1985); *Erickson v. United States,* 976 F.2d 1299, 1301 (9th Cir.1992). I find the inclusion of Part III particularly odd in light of the fact that the parties did not raise the issue. Appellant did not "challenge" the forfeiture statute's burden-shifting procedure, opinion at 427, he merely responded to our order that the parties be prepared to discuss the issue at oral argument. We ought not to feel "constrained to answer the government's assertion" that the statute has been held constitutional, opinion at 427-28, when it did not ask the question in the first place.

Accordingly, I concur in all but Part III of the opinion.